**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **HAMID KHOSHDEL NIKKHO**, **et al.,** | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-04172 (TNM) |
| **MARCO RUBIO**, *et al.*, | |
| Defendants. | |

**<u>MEMORANDUM OPINION</u>**

Without a visa, Gita Alvari is stuck thousands of miles away from her American husband, Hamid Khoshdel Nikkho.  After a May 2025 interview at a U.S. Embassy, Alvari's visa was refused, and her application was placed into "administrative processing."  Compl. ¶ 3, ECF No. 1.  That was the last substantive update Nikkho and Alvari received.  To speed things up, they now sue several State Department officials.  The officials move to dismiss the case.  The Court will grant that motion because there is no remaining duty for the Court to compel and the suit is barred by the doctrine of consular nonreviewability.

**I.**

Hamid Khoshdel Nikkho, a U.S. citizen, married Gita Alvari, an Iranian citizen, in 2022.  *See* Compl. ¶¶ 1, 15, 30.  Since then, Nikkho has been trying to help his wife come to the United States.  *See id.* ¶ 30.  Nikkho initiated the visa application process on his wife's behalf in May 2022 by filing a Form I-130.  *Id.* ¶¶ 16, 30.  U.S. Citizenship and Immigration Service approved that petition a year later.  *Id.* ¶ 2.  Alvari sat for an interview in May 2025 at the U.S. Embassy in Ankara, Turkey.  *Id.* ¶ 3.  After that, Alvari learned that a Consular Officer "refused" her application and placed it into administrative processing.  *Id.* ¶ 22; *see* Pls.' Ex. A at 2, ECF No.

1-1.  The Consular Officer has taken no action since.  *See* Pls.' Ex. A at 2 ("Case Last Updated: 05-May-2025"); Compl. ¶ 21.

Anxious for a decision, Nikkho asked about his wife's application several times—both on his own and with help from two congressmen.  Pls.' Ex. B at 4–5, ECF No. 1-1; Compl. ¶¶ 23–25.  But the administrative processing remains ongoing.  Compl. ¶¶ 25–26.  Alvari, meanwhile, remains in limbo in Iran.  *See id.* ¶ 32.  The couple's separation persists, and Nikkho worries about his wife's safety in Iran.  *Id.* ¶¶ 31, 32.

Unsatisfied, Nikkho and Alvari sued several State Department officials (collectively, "the Department"), arguing that they have unreasonably delayed a final decision on Alvari's application.[1]  *See id.* ¶¶ 54–56.  They ask this Court to order the Department to render a decision on the application "within thirty (30) days."  *Id.* at 34.  The Department moves to dismiss.  Mot. to Dismiss, ECF No. 9-1.  That motion is now ripe.

**II.**

The Department moves to dismiss the Complaint and petition for a writ of mandamus under Federal Rule of Civil Procedure 12(b)(6).[2]  The Court applies the familiar standards under that rule.  A complaint survives a 12(b)(6) motion only if it contains "sufficient factual matter,

---

[1]  The Court dismisses for lack of standing the claims against the Secretary of State because he cannot afford the relief Plaintiffs seek.  *See Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 97–98 (D.D.C. 2024); 8 U.S.C. § 1104(a) (preventing the Secretary from taking "functions conferred upon the consular officers relating to the granting or refusal of visas").  The Deputy Assistant Secretary for Visa Services, however, appears to be an appropriate defendant and the Department does not argue otherwise.  *See Yaghoubnezhad*, 734 F. Supp. 3d at 99 ("[T]he Deputy Assistant Secretary is not statutorily excluded from administering and enforcing the visa review process.").  So the case will not be dismissed on standing grounds.

[2]  The Department also apparently seeks dismissal under Rule 12(b)(1), *see* Mot. to Dismiss at 9, but does not make any argument about subject matter jurisdiction.  To the extent the Department argues that the consular nonreviewability doctrine deprives this Court of subject matter jurisdiction, that is wrong.  *See Dep't of State v. Muñoz*, 602 U.S. 899, 908 n.4 (2024).

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). To do so, its factual allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. But the Court need not "assume the truth of legal conclusions." *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

### III.

Plaintiffs' visa challenge does not get off the ground for at least two reasons. The Department has finally refused Alvari's application, so there is no remaining duty for the Court to compel. For the same reason, the suit is also barred by the doctrine of consular nonreviewability.

### A.

Plaintiffs seek a writ of mandamus and relief under 5 U.S.C. §§ 555(b) and 706. Compl. ¶¶ 97–161. "To state a claim for unreasonable delay under 5 U.S.C. § 706, or to make out an entitlement to mandamus relief, a plaintiff must identify a nondiscretionary duty held by the defendant." *Sedaghatdoust v. Blinken*, 735 F. Supp. 3d 1, 7 (D.D.C. 2024); *accord Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004). Because Plaintiffs have not pointed to an unfulfilled duty the Department owes them, their claims fail. *See Sedaghatdoust*, 735 F. Supp. 3d at 7.

Before turning to Plaintiffs' problems, the Department's argument that *Karimova v. Abate*, 2024 WL 3517852 (D.C. Cir. July 24, 2024), requires dismissal demands a word. According to the Department, that decision is binding precedent that resolves the case here. *See* Mot. to Dismiss at 11–12 n.1. That is wrong. Unpublished circuit opinions "may be considered persuasive authority, but they do not constrain a panel of the court from reaching a contrary

3

conclusion in a published opinion after full consideration of the issue." *In re Grant*, 635 F.3d 1227, 1232 (D.C. Cir. 2011); *see* D.C. Cir. Rule 36(e)(2).  The Department acknowledges as much but says that district courts are still obligated to follow what D.C. Circuit panels are not.  Mot. to Dismiss at 11–12 n.1.  Not so.  *See Akter v. Rubio*, 805 F. Supp. 3d 37, 45 (D.D.C. 2025).  After all, "[i]f an opinion has intentionally disclaimed precedential value, that disclaimer would attach to the opinion, not to the court considering the opinion."  *Id.*

Though not binding, *Karimova* is persuasive.  And that decision, as well as others from this Court, rightly conclude that the only discrete duty the Department owes a visa applicant like Alvari is "to grant or refuse a visa."  *Sedaghatdoust*, 735 F. Supp. 3d at 7; *see Karimova*, 2024 WL 3517852, at *4; *Liew v. Sanders*, 737 F. Supp. 3d 30, 37 (D.D.C. 2024).  This duty arises from the Immigration and Nationality Act (INA) and its implementing regulations.  The INA says that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer."  8 U.S.C. § 1202(b).  The Act's implementing regulations likewise specify that "[w]hen a visa application has been properly completed and executed," a consular officer "must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa."  22 C.F.R. § 42.81(a).

The crux of this dispute is whether the Department has fulfilled that duty.  The Department says it has—stressing that Alvari's visa application was "refused" in May 2025 under § 221(g) of the INA.  8 U.S.C. § 1201(g); Mot. to Dismiss at 10, 14–15.  Plaintiffs disagree that a § 221(g) denial satisfies the Department's duty, stressing that the real decision cannot occur until Alvari's application completes administrative processing.  Opp'n at 9–11, 13–15, ECF No. 10.  So, Plaintiffs say, the Department's duty is unfulfilled, and this Court can compel the Department to complete it.  *See id.*  They are mistaken.  As the Court explained at

4

length in *Yaghoubnezhad v. Stufft*, neither the INA nor its implementing regulations require the Department to timely complete—or complete at all—"administrative processing" once it has refused a visa under § 221(g).  734 F. Supp. 3d 87, 100–03 (D.D.C. 2024); *see Karimova*, 2024 WL 3517852, at *4 (reasoning that 5 U.S.C. § 555(b) does not independently impose such a duty).  That analysis applies with equal force here.

Resisting that conclusion, Plaintiffs offer two types of evidence in support of their argument that a § 221(g) refusal is non-final.  The Court evaluates these arguments mindful of the high standard for showing agency action subject to compulsion under the Administrative Procedure Act or by mandamus.  "The law must not only authorize the demanded action but require it; the *duty must be clear and indisputable*."  *Illinois v. Ferriero*, 60 F.4th 704, 715 (D.C. Cir. 2023) (cleaned up).  Plaintiffs point to no such duty.

First, Plaintiffs offer several provisions in the State Department's Foreign Affairs Manual as evidence that "an administrative processing refusal under § 221(g) is neither a final denial nor a termination of the application."  Opp'n at 10.  But the manual confirms the discretionary nature of post-refusal relief after administrative processing.  *See, e.g.*, 9 F.A.M. § 306.2-2(A)(2)(a) ("A prior [§ ] 221(g) refusal entered for administrative processing *may be* overcome once you can determine administrative processing is completed . . . ." (emphasis added)); *Karimova*, 2024 WL 3517852, at *2 (discussing the Foreign Affairs Manual and reasoning it permits a consular officer to "re-open and re-adjudicate the applicant's case" after administrative processing, but that "the visa application remains officially refused" unless it is re-opened).

Second, Plaintiffs argue that Congress "established a thirty-day benchmark for processing IR-1 immigrant visa applications following the completion of an interview."  Opp'n at 11 (citing Pub. L. No. 106-113, § 237, 113 Stat. 1501 (1999)).  An initial problem is that Plaintiffs contort

this provision. The thirty-day benchmark, for example, is not tied to interview completion. Pub. L. No. 106-113, § 237, 113 Stat. 1501, 1501A-430 (1999). Nor does it specifically refer to administrative processing. *Id.* In any event, as Plaintiffs themselves acknowledge, the provision "is precatory." Opp'n at 11. It stops far short of creating a "clear and indisputable duty" the Court can compel. *Ferriero*, 60 F.4th at 715 (cleaned up).

### B.

Consular nonreviewability also bars this suit. The idea behind the doctrine is simple. Because the "admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control," a consular officer's decision "to admit or to exclude an alien" is not ordinarily subject to judicial review. *Dep't of State v. Muñoz*, 602 U.S. 899, 907–08 (2024) (cleaned up); *see also Sedaghatdoust*, 735 F. Supp. 3d at 6–7.

Resisting the doctrine's application here, Plaintiffs again insist that the Department's § 221(g) refusal of Alvari's application was not a final decision because administrative processing is ongoing. Opp'n at 16–17. Again, they misunderstand the § 221(g) refusal. That refusal was "a final decision on the merits of [Alvari's] application," and consular nonreviewability prevents the Court from "inquir[ing] into the basis or validity of that decision." *See Sedaghatdoust*, 735 F. Supp. 3d at 7.

The subsequent administrative processing does not render that decision non-final. As this Court has explained, consular nonreviewability bars judicial review of the decision to place an application into "administrative processing" for "discretionary re-adjudication" as well as "the substance of a consular officer's visa determination." *Yaghoubnezhad*, 734 F. Supp. 3d at 103–04 (cleaned up); *Sedaghatdoust*, 735 F. Supp. 3d at 6–7. To be sure, the Department can

reconsider and grant Alvari's application after more factfinding. But the Court has no authority to compel this. *Yaghoubnezhad*, 734 F. Supp. 3d at 104; *Sedaghatdoust*, 735 F. Supp. 3d at 6–7. After all, compelling the Department to speed up its administrative processing would be "no different from ordering [it] to reopen a dispositive adjudication." *Yaghoubnezhad*, 734 F. Supp. 3d at 104. "A substantive change in the outcome of [the Department's] visa determination is, after all, the ostensible purpose of requiring [the Department] to conclude administrative processing." *Id.* "Even if such an order does not expressly mandate [the Department] to reach a specific outcome on Plaintiffs' visas, it still affects the substance of [the Department's] initial refusals by requiring their reexamination." *Id.* And that is exactly what the consular nonreviewability doctrine forbids. *See Muñoz*, 602 U.S. at 907–08.

Because this case already fails on two independent grounds, the Court declines to address whether there was undue delay under the factors outlined in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70 (D.C. Cir. 1984). *See* Mot. to Dismiss at 18–25. But those factors also appear unhelpful to Plaintiffs. *See, e.g.*, *Yaghoubnezhad*, 734 F. Supp. 3d at 104–05 (holding that a 22-month delay was not unreasonable and collecting cases upholding similar or even longer delays); *Dastagir v. Blinken,* 557 F. Supp. 3d 160, 165, 168 (D.D.C. 2021) (finding that 29-month delay was not unreasonable).

## IV.

The Department has validly refused Alvari's application for entry into this country. At this point, "[t]he Judicial Branch has no role to play." *Muñoz*, 602 U.S. at 908. The Court will therefore dismiss this case. A separate Order will issue today.

Dated: May 18, 2026                                      _____
                                                                    TREVOR N. McFADDEN, U.S.D.J.

7